# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALE VISTA ASSOCIATES, L.P., | ) |
| Plaintiffs, | ) Civil Action No. 18-1064 |
| v. | ) Judge Marilyn J. Horan |
| | ) Magistrate Judge Patricia l. Dodge |
| THE CINCINNATI CASUALTY COMPANY, | ) |
| Defendant. | ) |

## OPINION and ORDER

This case was originally referred to United States Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A) and (B), and Rule 72 of the Local Rules for Magistrate Judges. This matter was reassigned to Magistrate Judge Patricia L. Dodge on July 9, 2019. ECF No. 35. On December 31, 2019, Judge Dodge issued a Report and Recommendation, ECF No. 38, recommending that the Court grant The Cincinnati Casualty Company's Motion for Summary Judgment, ECF No. 21, and deny Vale Vista Associates, L.P.'s Partial Motion for Summary Judgment, ECF No. 25. The parties were informed that written objections to the Report and Recommendation were due by January 28, 2020. Each party filed timely written objections and respective Responses to each opposing party's objections. Following *de novo* review, the Report and Recommendation will be adopted in part, modified in part, and Summary Judgment in favor of The Cincinnati Casualty Company will be affirmed.[1]

---

[1] Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part: "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

I.     **BACKGROUND**

Vale Vista Associates, L.P. ("Vale Vista") seeks to have The Cincinnati Casualty Company ("Cincinnati") provide coverage for property damage to Vale Vista's warehouse pursuant to the parties' insurance policy ("Policy"). Vale Vista owns a warehouse facility located in Belle Vernon, Rostraver Township, Westmoreland County. In March 2013, pursuant to a ten-year written lease agreement, Vale Vista leased the warehouse to Aquion Energy, Inc. ("Aquion"), for its use in manufacturing and assembling sodium ion batteries and electricity storage systems. The terms of the lease agreement required Aquion to keep the building neat, clean, sanitary and safe in accordance with all laws and rules, and to maintain the building and its systems in good operating and physical condition. The lease also required Aquion to pay a security deposit of $29,278.00. At the end of the ten-year term, Aquion was required to surrender the premises to Vale Vista in broom-clean and good operating and physical condition, with reasonable wear and tear excepted.

In September 2017, the entity that purchased Aquion's assets after Aquion declared bankruptcy, vacated the leased premises and ceased making rental payments. At that time, Vale Vista discovered that Aquion did not clean the warehouse as required. The warehouse had a black powder residue throughout the premises. On September 12, 2017, Vale Vista submitted a first party insurance claim to Cincinnati for the costs associated with the clean-up and remediation of the warehouse. By letter dated April 9, 2018, Cincinnati denied Vale Vista's claim, asserting that the damage was not accidental, a requirement for coverage under the Policy. Cincinnati determined the damage from the black powder residue resulted from Aquion's breach of the lease when it failed to surrender the leased premises in a clean condition as required by the lease. Cincinnati also denied coverage based upon the Policy's exclusion for "pollutants." The

2

black powder contained chromium, thus it was a hazardous waste under federal regulations and a "pollutant" as defined by Cincinnati's insurance policy with Vale Vista. In this action, Vale Vista seeks declaratory judgment that its loss is covered under the Policy, that there is no "pollutant" exclusion of such coverage, and that Cincinnati breached the insurance contract.

In her December 31, 2020 Report and Recommendation, Judge Dodge concluded that the policy term "accidental" was ambiguous and she analyzed the claimed loss coverage issue in this case from that perspective. She then interpreted and applied the policy language to determine that the black powder residue damage was an accidental physical loss and therefore a covered loss under the Policy. However, Judge Dodge also determined that Vale Vista's claim was excluded from coverage pursuant to the Policy's "pollutants" exclusion. On that basis, Judge Dodge recommended denial of Vale Vista's Partial Motion for Summary Judgment and that Cincinnati's Motion for Summary Judgment be granted because coverage for the loss was excluded under the Policy.

## I. DISCUSSION

Vale Vista objects and argues that Judge Dodge erroneously applied the "pollutants" exclusion. Cincinnati objects and argues that Judge Dodge erroneously determined that Vale Vista's claim was a covered "accidental physical loss" under the Policy. These timely objections require the district judge to "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Fed. R. Civ. P. 72(b)(3).

### A. Coverage Under the Policy

Cincinnati argues that Judge Dodge erred in concluding that the term "accidental physical loss" is an ambiguous term within the policy. It also asserts that she erred in applying a

"perspective of the insured" analysis to conclude that the damage caused to the warehouse by Aquion was a covered accidental physical loss. Cincinnati argues that Vale Vista's loss occurred because Aquion breached the lease agreement when it failed to return the premises in a cleaned condition as was required by the terms of the lease.

"Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co. v. Murray,* 658 F.3d 311, 321 (3rd Cir. 2011); *see also Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 233 A.2d 548, 551 (Pa. 1967). "Words of common usage must be 'construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms.'" *Amer. Auto. Ins. Co.*, 658 F.3d at 320 (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006), citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

Following de novo review of the term "accidental" in the context of the entire Policy, this court concludes that such term is not reasonably susceptible of different constructions and that it is therefore not ambiguous. "Accidental" is a word of common usage and must be construed in its natural, plain, and ordinary sense. *Amer. Auto. Ins. Co.*, 658 F.3d at 320. The common ordinary meaning of the term "accident" as defined in Merriam-Webster's Dictionary, and as defined in Judge Dodge's Report, means "'an unforeseen and unplanned event or circumstance;' the term 'accidental' means 'occurring unexpectedly or by chance.'" ECF No. 38, at 9. This definition comports with the definition of "accident" as discussed in Pennsylvania case law.

"In *Donegal Mutual Insurance Co. v. Baumhammers*, the Supreme Court of Pennsylvania said that, when 'accident' is undefined in an insurance policy, Pennsylvania courts should treat the term as 'refer[ing] to an unexpected and undesirable event occurring unintentionally....'" *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 405-06 (3d Cir. 2016) (quoting *Baumhammers*, 938 A.2d 286, 292 (Pa. 2007)). "'Accident' has been defined in the context of insurance contracts as an event or happening without human agency or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens." *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 870 (Pa. 2004). "The key term in the ordinary definition of 'accident' is 'unexpected.'" *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2006) (quoting II New College Dictionary 6 (2001)). "'Accidental' is an adjective meaning happening by chance, unexpectedly, not in the usual course of things." *McMahon v. State Farm Fire & Cas. Co.*, No. 06-3408, 2007 WL 1377670, at *4, 2007 U.S. Dist. LEXIS 34137, at *10 (E.D. Pa. May 8, 2007) (quoting Black's Law Dictionary 945 (6th ed. 1990)).

Vale Vista leased the warehouse for Aquion's use in its manufacture and assembly of sodium ion batteries and electricity storage systems. In the arms-length transaction between these sophisticated business entities, lease terms were negotiated and agreed upon. The lease required the warehouse to be surrendered in cleaned condition. Remedies in the event of breach, including forfeiture of the $29,278.00 security deposit plus damages, were also negotiated and contracted for within the lease. The lease was breached in that Aquion's manufacture and assembly of sodium ion batteries and electricity storage systems caused the black powder, containing chromium, to coat the surfaces of the warehouse and such coating was not cleaned before the property was surrendered to Vale Vista. While unfortunate for Vale Vista in this

circumstance, breaches of terms of contracts are not uncommon. Sophisticated parties, as in this case, negotiate and provide lease terms to adequately protect against losses from such breaches. There is nothing unexpected or fortuitous in the occurrence of the breach in this case. What was unexpected was Aquion's bankruptcy, which impacted available remedies consequent to Aquion's breach in this case. However, the bankruptcy did not cause the property damage to the warehouse, although it impaired Vale Vista's ability to collect the damages it bargained for in its lease with Aquion. Thus, Vale Vista's claimed loss derives from the breach of its commercial business lease with Aquion and from the consequence of the intervening bankruptcy. Such loss, while unfortunate, was not an "accidental physical loss" occurrence for which the Cincinnati Policy provides coverage. Therefore, Vale Vista cannot establish that the property damage was accidental. Thus, Vale Vista's claim is not a covered loss under the Policy.

Furthermore, even if the term "accidental" was ambiguous under the policy, this court reaches the same conclusion that there was no coverage for Vale Vista's claim. In the event of ambiguity, Vale Vista argues that analysis from the "perspective of the insured" must be considered to determine whether a loss under the circumstances is an "accidental physical loss." Such analysis requires an examination into the context of the insurance claim rather than merely considering whether the insured was surprised by or did not expect the damage. Here, as discussed above, Vale Vista did consider the prospect that the property would not be returned in a broom clean condition and for that it contracted for consequential remedies, (damages and forfeited security deposit), for its protection. The loss to Vale Vista, due to its inability to collect those lease remedies, is not a loss that, even from Vale Vista's perspective, would be accidental in order to qualify for coverage under the Cincinnati policy. Thus, the claimed loss under the Policy was not accidental and there is no coverage.

Beyond the above and continuing analysis that assumes ambiguity, several key cases relied upon by Vale Vista do not support Vale Vista's argument that it's claim should be a covered "accidental physical loss" under the Policy.  In *Baumhammers*, the Pennsylvania Supreme Court found that shootings committed by the insureds' son qualified as an "accident" under the policy.  *Baumhammers*, 938 at 293.   The Supreme Court described the shooting spree as "extraordinary" and could not be considered "the natural and expected result" of the parent's alleged acts of negligence.  *Id.*  The Court further stated that it was "an event so unexpected, undesigned and fortuitous as to qualify as accidental within the terms of the policy." *Id.*  In another case, the United States Court of Appeals for the Third Circuit reviewed the circumstances of an insurance coverage dispute where the insured's property was alleged to have been converted to a third party in violation of a valid court order.  *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71 (3d Cir. 1989).  The Court defined a fortuitous event as "an event which *so far as the parties to the contract are aware,* is dependent on chance. It may be . . . within the control of third persons.… *Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*, 724 F.2d 369, 372 (3d Cir. 1983) (quoting Restatement of Contracts § 291 comment a (1932) (emphasis added)).   The Court held that a fortuitous loss occurred as a result of the conversion of the equipment in the face of a valid court order.  The Court explained that "[i]t is reasonable to expect that a valid court order will be obeyed. When parties fail to comply with a court order, in this case to return property pursuant to a valid court order—thereby converting such property—a fortuitous event has occurred." *Intermetal Mexicana*, 866 F.2d at  78.  Finally, in *Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, the Third Circuit Court explained that "the test of whether the injury or damage is caused by an accident must be determined from the perspective of the insured and not from the viewpoint of the person who committed the injurious act."  140

F.3d 222, 226 (3d Cir. 1998). Applying the "perspective of the insured analysis" to the facts of that case, the Court determined that from the insured's perspective, the assault and death of one of her tenants by a painter hired by the insured "was unexpected, entirely fortuitous, and, therefore, an accident." *Id.* The Court described the accident as an "unintended and unexpected murder." *Id.* The facts and circumstances in the present case are very distinguishable from all of these cases.

In contrast to the above cases, Aquion's business operation, manufacture and assembly of sodium ion batteries and electricity storage systems, was known at the time of the lease. The chromium black powder byproduct damage to the building surfaces is not "an event, which, under the circumstances, is unusual and not expected by" Vale Vista. *Greenfield*, 855 A.2d at 870. Vale Vista negotiated and contracted for the return of the leased premises "in broom-clean condition and in the condition required hereunder to be maintained [*i.e*, "in a neat, clean, sanitary and safe condition"] . . . reasonable wear and tear excepted." Lease Agr. ¶¶ 17.1 & 5.2(a), ECF No. 28-1, at 8, 21-22. The lease also imposed liability on Aquion if it did not abide by the lease terms. Vale Vista specifically included a condition to account for and protect itself against the possibility that Aquion would not return the warehouse in a condition consistent with the agreement. Vale Vista argues that it is reasonable for a party to a contract to expect that the other party will abide by the terms of the contract. While such may be a reasonable expectation, it does not mean that when Aquion breached the lease through its ordinary business operations and caused damage, which it did not remedy upon surrender of the property, that such was unexpected or fortuitous. In fact, as opposed to a court ordered duty, the arms-length negotiated lease agreement contained agreed upon contractual duties and consequential breach of contract remedies. Aquion agreed not to damage the property and risked losing its security deposit and

8

being sued by Vale Vista for damages if it breached the lease. Vale Vista was likewise aware of the risk of receiving the property back in a condition that breached the terms of the lease. Vale Vista contracted with Aquion to protect itself within the lease and established remedies through the security deposit and right to pursue breach of contract damages. Aquion's breach was not a fortuitous event, as it was not "an event which so far as [Vale Vista and Aquion were] aware, is dependent on chance." *Compagnie des Bauxites de Guinee*, 724 F.2d at 372. Likewise, that Aquion could breach the terms of the lease by causing damage through the normal operations of its business, which it did not clean up, is not "a fact unknown to the parties." *Id.* It was not unexpected that such a breach could occur; it was negotiated, provided for, and remedies for such breach were agreed upon. Therefore, even from a "perspective of the insured" analysis as proposed by Vale Vista, the physical loss resulting from Aquion's breach of contract was not "accidental" under the terms of the Policy. Therefore, Vale Vista's claim to Cincinnati was not a covered loss under the Policy. The Court therefore sustains Cincinnati's objections to the Report and Recommendation that Vale Vista's loss was covered under the Policy. Vale Vista's property damage claim was *not* a covered loss under the Policy.

    **B.**     **Pollutant Exclusion**

Vale Vista objects and argues that Judge Dodge erred when she applied the "pollutants" exclusion to exclude coverage for Vale Vista's claim. Vale Vista contends Judge Dodge failed to properly apply the proper summary judgment standard, in that she resolved disputed issues of fact when she concluded that the substance was a pollutant. Vale Vista also argues that Judge Dodge erred in rejecting its argument that the exclusion does not apply unless a pollutant causes the property damage. Following careful review, this Court finds no error in Judge Dodge's rulings.

In her well-reasoned Report and Recommendation concerning these issues, Judge Dodge determined that Cincinnati provided evidence that the substance was a "pollutant" and that Vale Vista did not produce sufficient evidence to create a genuine issue of material fact. Vale Vista asserts that genuine issues of material fact exist because Cincinnati's expert tested two samples, and only one of those samples had an excess value result. Also, the expert was observed taking two piles of material from the warehouse floor. However, no samples were taken "from any other areas inside the warehouse, such as by wiping the components inside the building that were coated with the black powder." Decl. of M. Ivill, at ¶ 8, ECF No. 32. Vale Vista argues that such evidence creates questions as to whether the expert tested "*the* black powder." Judge Dodge fully analyzed Vale Vista's arguments in this regard and determined that the substance was a "pollutant". Judge Dodge also noted that such evidence presented challenges to the methodology applied to the testing, *i.e*, the location from which the samples were collected and the number of samples tested. Vale Vista's evidence did not raise a question of fact concerning Cincinnati's expert report of the presence of toxic levels of chromium. In addition, Judge Dodge noted that "Vale Vista's position [challenging whether the substance was toxic] is also contradicted by an estimate it secured in October 2017 that included 'decontaminating' the Building and testing for hazardous substances to be cleaned up, as well as the proof of claim in Aquion's bankruptcy it submitted under oath in which it states that the Building would have to be decontaminated." ECF No. 38, at 18 n. 15. The record fully supports that Judge Dodge appropriately and correctly concluded that Cincinnati established the toxic nature of the powder, with no question of material fact existing.

Further, Judge Dodge rejected Vale Vista's argument that the "pollution" exclusion does not apply because Vale Vista only claimed reimbursement for cleaning the black powder from

10

the warehouse, and not for any damage due to the toxic nature of that powder. While other jurisdictions do not permit an insurer to rely on a pollutant exclusion unless the damage is caused by the toxic nature of the pollutant, Judge Dodge predicted "that the Pennsylvania Supreme Court would not limit a pollution exclusion to the situation in which the harm is caused solely by the 'toxic' element of the pollutant." ECF No. 38, at 21. Judge Dodge also determined that the Policy's pollution exclusion language was clear and unambiguous. This court concurs. There was no error in Judge Dodge's determinations.

Judge Dodge's Report and Recommendation to grant Cincinnati's Motion for Summary Judgement, based upon the Policy's pollution exclusion of coverage, is adopted.

## II. CONCLUSION

Based upon the above, Cincinnati's objection to the Report and Recommendation concerning the covered loss is sustained. Vale vista's claim for the damage at issue was not a covered loss under the Policy. Further, Vale Vista's objections to Judge Dodge's Report and Recommendation, that the loss at issue was an excluded loss under the "pollutants" exception to coverage, are overruled. The "pollutants" exclusion applies to preclude coverage for the claim in this case.

Accordingly, Summary Judgment will be entered in favor of Cincinnati and the following Order is hereby entered.

**ORDER**

AND NOW, this 3rd day of March, 2020, it is hereby ORDERED that Judge Dodge's Report and Recommendation, ECF No. 38, dated December 31, 2019, is ADOPTED as the Opinion of this Court as to the pollutants exclusion. Said exclusion precludes coverage for the

damage claimed by Vale Vista. The Report and Recommendation, concerning the issue of covered accidental physical loss, is not adopted. This Court has determined that there was no accidental physical loss in this case; therefore, Vale Vista's damage claim is not a covered loss under the Policy. As such, there is no coverage for Vale Vista's claim.

Cincinnati's Motion for Summary Judgment (ECF No. 21) is GRANTED in full. Vale Vista's Partial Motion for Summary Judgment (ECF No. 25) is DENIED. Judgment shall be entered in favor of Cincinnati and against Vale Vista.

A separate order entering judgment in favor of The Cincinnati Casualty Company pursuant to Federal Rule of Civil Procedure 58 will be entered.

By the Court:

Marilyn J. Horan
United States District Judge